IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| v. | : | NO. 99-cr-238 |
| DARRYL LAMONT FRANKLIN, | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                October  30, 2008

Darryl Lamont Franklin filed two (2) *pro se* motions for "Independent Action Pursuant to Federal Rules of Civil Procedure, Rule 60(d)(3)" (along with several sets of interrogatories) on August 27, 2008 (Document #99) and October 3, 2008 (Document #102).  The government has filed no responses.  It is clear that neither motion has merit.  Therefore, I will deny both motions.

**Procedural Background**

Darryl Lamont Franklin was convicted by a jury on September 2, 1999 of one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One), one count of aiding and abetting interference with commerce by robbery in violation of 18 U.S.C. §  1951 and 18 U.S.C. §  2 (Count Two), one count of use of a gun during a crime of violence in violation of 18 U.S.C. §  924(c)(1) (Count Three), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §

922(g)(1) (Count Four). In February 2000, Mr. Franklin was sentenced to two-hundred and five (205) months imprisonment and three (3) years of supervised release.[1] Mr. Franklin filed a *pro se* motion for "Judgement of Equital" on February 10, 2000, a *pro se* motion for grand jury transcripts on March 24, 2000, a *pro se* § 2255 motion to vacate, set aside or correct his sentence on December 17, 2001. On November 15, 2000, the Court of Appeals for the Third Circuit affirmed Mr. Franklin's sentence and conviction. United States v. Franklin, 248 F.3d 1131 (3d Cir. 2000). This Court denied Mr. Franklin's § 2255 motion on April 26, 2002. On May 13, 2002, Mr. Franklin filed a *pro se* motion to alter or amend judgment which this Court denied. On May 19, 2003, the Court of Appeals denied Mr. Franklin's request for a certificate of appealability. On August 4, 2004, Mr. Franklin filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b) which this Court denied on February 23, 2005. Mr. Franklin now has filed the present motions seeking an independent action under Federal Rule of Civil Procedure 60(d)(3). Specifically, he filed two (2) motions, as well as several sets of interrogatories on both

---

[1] The Mr. Franklin's total offense level for sentencing guideline purposes was determined to be 28, with a criminal history category of III for a guideline range of 97 to 121 months. Count 3 required a mandatory minimum of 84 months which ran consecutive to the other counts. The presentence report suggested a 2-level guideline enhancement for obstruction of justice. Judge VanAntwerpen, the sentencing judge, found that based on other factors, i.e., Mr. Franklin's false testimony, two refusals to provide a blood sample in spite of a search warrant, attempt to fabricate evidence and the extremely violent nature of Mr. Franklin's crime, he "would have been inclined to depart upward substantially were it not for the full amount of the additional consecutive sentence mandated by defendant's employment of a firearm in violation of 18 U.S.C. § 924(c)." United States v. Franklin, 2000 U.S. Dist. LEXIS 1782, 39-40 (E.D. Pa. Feb., 14, 2000). That enhancement, therefore, was not included in sentencing Mr. Franklin. Id.

August 27, 2008 and October 3, 2008.

**Factual Background**

The relevant facts of this case were supplied in Judge VanAntwerpen's opinion in his ruling regarding Mr. Franklin's pretrial motions.  These same facts were previously recited by this court in its denial of Mr. Franklin's motion for relief from judgment on February 23, 2005:

> On the afternoon of April 14, 1999, the defendant and another person entered Talisman's Jewelry Store at 12th Street and Green Street, Reading, Berks County, Pennsylvania for the purpose of robbing money and jewelry from the store. Danny Cafoncelli, a store employee, was struck in the head, handcuffed at gunpoint, and thrown down a flight of cellar stairs in the basement of the store. While the defendant was in the store, he pointed a gun at another employee, Louis Cafoncelli, who is the father of Danny Cafoncelli. At that point, Louis Cafoncelli drew a 9mm revolver which he carries. There was an extended struggle during which the defendant was shot. The defendant ultimately fled from the store. The government alleges that approximately $30,000 in cash, jewelry, a handgun and a rifle were taken during the robbery.
>
> The Reading Police responded to the jewelry store robbery. Officer Fizz and other officers interviewed Louis Cafoncelli who gave a brief description and said that one of the perpetrators may have been shot. While this interview was taking place, Officer Fizz was informed by a bystander that nearby St. Joseph's Hospital was treating a gunshot victim. Officer Fizz immediately responded to the hospital. In the meantime, Louis Cafoncelli was driven to another hospital.
>
> Officer Fizz arrived at the hospital and entered the emergency room where the defendant was on a gurney receiving treatment. The defendant was in pain. On the floor next to the gurney, were bloody articles of clothing which had been cut-up in the process of removing them from the defendant. Officer Fizz asked the defendant what had happened. The defendant told Officer Fizz he had been robbed but he was unable to say where the robbery took place. The defendant gave the false name of Lamont Williams to both Officer Fizz and the hospital.

>After talking to the defendant, Officer Fizz left him and went outside to confer with another uniformed officer. At that point, the defendant was not under arrest and no police officer was present. Officer Fizz and the other officer learned from hospital security personnel that jewelry had been found outside the hospital in a trash can. At that point, detectives from the Criminal Investigation Division were summoned to the hospital.
>
>Detective Detrick arrived at the hospital in about ten minutes and conferred with the officers present. At that point, the defendant was placed under arrest and a guard was posted at his bedside. At the time of the arrest, Officer Fizz collected the bloody cut-up articles of clothing from the floor because he knew that the hospital would throw them out if he did not take action. Detective Detrick took a photograph of the defendant in the hospital and returned to headquarters where he made a 8-person photographic line-up display. After viewing the photographic line-up display approximately 2 1/2 hours later at police headquarters, Louis Cafoncelli identified the defendant as one of the persons who had robbed the jewelry store. Detective Detrick made a xerox copy of the photographic line-up display before returning the individual pictures which were used in it to their respective files. This xerox copy was received at the pretrial hearing as Government Exhibit 1. For the sake of clarity, the color pictures used for the original line-up were reassembled and placed in a photographic line-up similar to the original line-up. This was received at the pretrial hearing as Government Exhibit 2.
>
>On June 10, 1999, F.B.I. Agent Tom Neeson interviewed a Mr. Colter, who was a prison cellmate of the defendant. Colter told the agent that the key to the jewelry store basement door which led to the cellar steps was still in the defendant's clothing retrieved from the floor of the emergency room. Police personnel subsequently found this key in the defendant's sport coat.

U.S. v. Franklin, 64 F.Supp.2d 435, 436-37 (E.D.Pa.1999).  Additionally, Mr. Franklin testified at trial that on the date of his robbery he was job-searching in Reading, was shot twice at a high school, forced into a car, and woke up on the ground near a hospital.

**Discussion**

Mr. Franklin brings this case pursuant to Fed. R. Civ. P. 60(d)(3) which provides that Rule 60 "does not limit a court's power to . . .set aside a judgment for fraud on the court." In his motions, Mr. Franklin seeks to collaterally attack his underlying conviction and relitigate issues this court has already considered and rejected in dismissing his habeas petition. Therefore, it appears that the motions should be treated as a successive *habeas* petitions. Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004). These motions, under the guise of Rule 60(d)(3) motions, are actually successive *habeas* petitions which may not be filed without the Court of Appeals' approval. 28 U.S.C. § 2255.

Mr. Franklin's most recent two (2) motions suffer from a significant infirmity: Civil Rule 60(d)(3) is a civil rule and therefore an inappropriate vehicle to vacate a criminal sentence. See United States v. Pope, 124 Fed. Appx. 680, 682 (2d Cir. 2005); United States v. Wallace, 82 Fed. Appx. 701, 701 (1st Cir. 2003). The Federal Rules of Civil Procedure govern "suits of a civil nature." Fed. R. Civ. P. 1. Typically, they do not apply in criminal cases.[2] Mr. Franklin has no civil action pending before this Court. The sentence he seeks to amend was rendered in a criminal case, not a civil case. Indeed, his motion was filed in his criminal case under the criminal case number pertaining to that criminal case. Accordingly, Civil Rule 60 does not apply and supplies no basis for this

---

[2] While Rule 60*(b)* may be used in limited circumstances to set aside habeas denials, Mr. Franklin has filed these motions under Rule 60*(d)(3)*. Further, Mr. Franklin has not filed a § 2255 motion or any other habeas motion. By itself, no part of Rule 60 can confer jurisdiction on this sentencing court to provide habeas relief. See Pope, 124 Fed. Appx. at 682.

Court's jurisdiction to amend Mr. Franklin's criminal sentence.

Guised as Rule 60(d)(3) motions, Mr. Franklin's motion seeks to collaterally attack his underlying conviction. The motions, therefore, must be treated as a successive habeas petition. See, e.g., Pridgen, 380 F.3d 721 (3d Cir. 2004); United States v. Edwards, 309 F.3d 110, 113 (3d Cir. 2002) (Rule 60(b) motion to reconsider a § 2255 petition should be treated as unauthorized, successive § 2255 petition ). Indeed, Congress' goal of restricting the availability of relief to habeas petitioners is served by this construction. Pridgen, 380 F.3d at 727.

Mr. Franklin's motions raise no challenge under Rule 60(d)(3) to the ruling in his prior habeas petitions under any basis addressed by 28 U.S.C. § 2244 or § 2255 such as newly discovered evidence or a new rule of constitutional law. In any case, because this is a successive habeas petition, it cannot be filed without the Court of Appeals' approval. 28 U.S.C. § 2255.

**Conclusion**

For the foregoing reasons, Mr. Franklin's motions are DENIED without prejudice to Mr. Franklin moving in the United States Court of Appeals for the Third Circuit for an order authorizing the District Court to consider his successive application under 28 U.S.C. § 2255.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| v. | : | NO. 99-cr-238 |
| DARRYL LAMONT FRANKLIN, | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 30th day of October, 2008, upon consideration of Mr. Franklin's motions for independent action pursuant to Federal Rule of Civil Procedure 60(d)(3) (Documents #99 and #102), it is hereby **ORDERED** that the motions are **DENIED** without prejudice to Mr. Franklin's moving in the United States Court of Appeals for the Third Circuit for an order authorizing the District Court to consider his second or successive application under 28 U.S.C. § 2255.

BY THE COURT:

 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.